UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| DERRICK R. YOUNG, ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 12-CV-2168 |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |
| ) | |

**OPINION**

On June 26, 2012, Petitioner filed his well-drafted and well-argued Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255 (#1). On July 25, 2012, the Government filed its Response (#4). On September 17, 2012, Petitioner filed his Reply (#7). The court has reviewed the briefs and transcripts. Following this careful review, Petitioner's Motion (#1) is DENIED.

**Background[1]**

On November 3, 2008, police officer Scott Rosenbery observed a car make a right-hand turn without signaling. Rosenbery initiated a traffic stop by activating his emergency lights.

---

[1] **As Petitioner's Reply (#7) does not contest Respondent's factual background as stated in Respondent's Response (#4), facts without direct citations are taken from Petitioner's Motion (#1) and Respondent's Response (#4) where the two do not contradict.**

After the car stopped, the driver, who was the vehicle's only occupant, identified himself as Petitioner. Rosenbery learned that Petitioner was on parole.

Rosenbery asked Petitioner to step out of his car. Rosenbery then directed Petitioner to interlock his hands over his head, but Petitioner placed his hands on the hood of his car instead. By this time, a second squad car had arrived at the scene, and another police officer stood behind Rosenbery while he was talking to Petitioner. When Rosenbery repeated his order directing Petitioner to place his hands over his head, Petitioner began to run.

The two officers chased after Petitioner, who ignored their orders to stop. Rosenbery fired a Taser, and Petitioner fell to the ground. The two officers secured Petitioner's hands with cuffs and lifted him to his feet. As they did so, Rosenbery observed a clear plastic bag containing marijuana on the ground where Petitioner had fallen and seized it as evidence. While the officers escorted Petitioner to the squad car, Petitioner began squirming and moving his hands toward the front-right pocket of his jeans. At the squad car, the officers searched Petitioner's pockets. In Petitioner's front-right jeans pocket, the officers found 42 packets of heroin, individually wrapped in tinfoil. During a post-arrest interview, Petitioner admitted the heroin was his and said that he had intended to sell it in Decatur.

On September 1, 2009, Petitioner was charged by indictment with one count of knowingly possessing a mixture and substance containing heroin, a Schedule I controlled substance, with the intent to distribute, in case 09-CR-20067. (No. 09-CR-20067, #4). On April 9, 2010, Petitioner filed, among other things, a motion to suppress the heroin as improperly seized. The motion raised two claims: (1) the traffic stop was invalid because Petitioner had signaled as required; and (2) Petitioner's arrest was improper because it was made "without

probable cause and/or, because he was on parole." On May 27, 2010, this court held a hearing on the motion to suppress. Petitioner's counsel noted, in pertinent part, as follows:

> [T]he only issue I see, Your Honor, is the parole search. Clearly under the testimony before us, Your Honor – and there's no question of its credibility; it's the only testimony we heard – my client failed to signal, and certainly an officer is entitled to pull someone over for a traffic violation.
>
> When [the officer] received word from, by radio that my client was on parole – and Your Honor, I know, is well aware of this because we've argued this issue before the Court before . . . . The Supreme Court has held that when an individual is on parole a police officer may search him.
>
> The other issue, Your Honor, would be: Do they have the right to arrest him? And I think it's probably a distinction without a difference in this particular case because, to search him, first you must secure him.
>
> Prior to the search, the officer was unable to search – secure my client and search him, and then the chase ensued. And, of course, a new crime for which the officer had probable cause to arrest came into being; that is, escaping from the police officer. At that point, [Petitioner] clearly had the right to make the search. [Petitioner] was in, in custody, and we go from there.

On this issue, this court's primary concern was whether the officer had "a right to ask [Petitioner] to put his hands on the vehicle instead of writing the ticket and allowing him to leave." In response, the Government first argued that once Rosenbery had probable cause to believe Petitioner had committed a traffic offense, Petitioner could be arrested and searched. Second, the Government argued that because Petitioner was on parole, the officer could lawfully search Petitioner pursuant to *Samson v. California*, 547 U.S. 843 (2006) (holding that a suspicionless search of a parolee, under California parole terms, did not violate Fourth Amendment). Petitioner's counsel noted that *Samson v. California* was controlling and conceded this issue. This court then denied Petitioner's motion to suppress. Further, this court found that Rosenbery was credible and that Rosenbery had probable cause to stop Petitioner for failing to

- 3 -

signal a right-hand turn. This court also found that Petitioner had fled before any search occurred, and that the flight and possession of marijuana supplied probable cause for Rosenbery to arrest, take into custody, and search Petitioner. Thus, this court concluded that the search of Petitioner's jeans pocket incident to arrest was with probable cause and therefore valid.

On August 6, 2010, Petitioner consented to a change-of-plea proceeding before United States Magistrate Judge David G. Bernthal. At the outset of the hearing, the court confirmed with the parties that the guilty plea was an "open plea" and that there was no plea agreement between the parties. Following a thorough plea colloquy with Petitioner, during which the court twice more affirmed that Petitioner was pleading guilty without any agreement, the court entered a report recommending that this court accept the guilty plea. On September 1, 2010, this court approved the recommendation of the magistrate judge and accepted Petitioner's guilty plea.

On December 21, 2010, this court held Petitioner's sentencing hearing. The Presentence Investigation Report (PSR) listed three prior convictions that qualified Petitioner for career offender status at his sentencing. These were two convictions for a controlled substance offense: Possession of a Controlled Substance with Intent to Deliver (namely, cocaine) (Macon County #04-CF-1326) (#29 ¶ 44) and Possession of Cannabis with Intent to Deliver (Macon County #04-CF-769) (#29 ¶ 43), and one prior conviction for a crime of violence: Aggravated Battery with a Firearm (Macon County #97-CF-733) (#29 ¶ 41); *see also* (#29 ¶ 26). The PSR concluded that because Petitioner was 35 years old when he committed the underlying offense, which was a felony controlled substance charge, he was considered a Career Offender under the sentencing guidelines. Finally, PSR noted that Petitioner had an advisory guideline imprisonment range of

188 to 235 months. Neither party objected to the PSR, so Petitioner was sentenced to 188 months of imprisonment to be followed by a six-year term of supervised release.

This court then informed Petitioner of his right to appeal his sentence and the ways he could file the appropriate notice of appeal. During this instruction, Petitioner's attorney indicated that Petitioner intended to challenge the denial of the motion to suppress on appeal. Regrettably, due to a misunderstanding, this court erroneously informed Petitioner that he could appeal the denial of his motion to suppress, and the Government did not correct this court.

Petitioner appealed his conviction, claiming that this court erred in denying his pretrial motion to suppress evidence. The Seventh Circuit affirmed, noting as follows:

> A guilty plea generally operates as a waiver of all non-jurisdictional issues on appeal. There is a narrow exception under Federal Rule of Criminal Procedure 11(a)(2) that allows a defendant, with the consent of the court and the government, to explicitly condition his guilty plea on the right to appeal adverse judgments on pre-trial motions. Here, [Petitioner] argues that he made such a conditional plea by expressing his intention to appeal the denial of the motion to suppress at his sentencing hearing. The government stood by silently during sentencing while the judge mistakenly informed [Petitioner] that he could appeal that decision.
>
> Although Rule 11(a)(2) requires conditional plea agreements to be in writing, [Petitioner] argues that under *United States v. Elizalde–Adame,* the writing requirement should be excused. We made clear in *Elizalde–Adame* that in order to excuse the writing requirement of conditional plea agreements, "something in the record ... [must] plainly show[ ] that the government had agreed to a conditional plea and that the district court had accepted it."
>
> There is no evidence that when [Petitioner] pleaded guilty he had reached any conditional agreement, written or otherwise, with the government. The record indicates that his guilty plea was made freely and in consultation with his attorney. At no point during the plea hearing does the record suggest that [Petitioner] or his attorney intended to reserve the right to challenge the ruling on the motion to suppress. We will not negate the intentions of the parties at the time of this plea based on an unimportant misstatement made later at

> [Petitioner's] sentencing hearing. Accordingly, we find that he has waived any right to appellate review of the issue.

*United States v. Young*, 436 F. App'x 721, 722 (7th Cir. 2011) (internal citations omitted).

## Analysis

Petitioner first claims that counsel was ineffective for failing to challenge one of his prior convictions used to enhance his sentence as a career offender. Second, Petitioner claims that counsel was ineffective for failing to preserve Petitioner's ability to appeal the denial of his suppression motion. Finally, Petitioner claims counsel's lack of investigation into and knowledge of Illinois law concerning parole searches prejudiced him by conceding that this court should deny his suppression motion.

To succeed on a claim for ineffective assistance of counsel, Petitioner must show both that his attorney's performance was objectively deficient by falling outside the wide range of competent representation and that he was prejudiced by the incompetent representation. *United States v. Jones*, 635 F.3d 909, 915 (7th Cir. 2011) (citing *Strickland v. Washington*, 466 U.S. 668, 687–96 (1984)). To establish prejudice, the petitioner must show that there is a reasonable probability that, but for his counsel's mistakes, the result of the trial would have been different. *Strickland*, 466 U.S. at 694. "To reflect the wide range of competent legal strategies and to avoid the pitfalls of review in hindsight, [a court's] review of an attorney's performance is highly deferential and reflects a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Li v. United States*, 648 F.3d 524, 527- 28 (7th Cir. 2011) (citing *Strickland*, 466 U.S. at 689). "The defendant must overcome the presumption that, under

the circumstances, the challenged action might be considered sound trial strategy." *Koons v. United States*, 639 F.3d 348, 351 (7th Cir.2011). If a strategic reason for a decision was sound at the time it was made, the decision generally cannot support a claim of ineffective assistance of counsel. *Li*, 648 F.3d at 528 (citing *United States v. Cieslowski*, 410 F.3d 353, 360 (7th Cir.2005) and *United States v. Lathrop*, 634 F.3d 931, 937–38 (7th Cir. 2011) (noting that, provided counsel's reasons for his decision were not "so far off the wall that we can refuse the usual deference that we give tactical decisions by counsel, his performance will not qualify as deficient.")).

*Claim 1: Career offender enhancement*

Petitioner argues that his prior conviction in #04-CF-769 for possession of cannabis should have been classified as a misdemeanor under the Controlled Substance Act (CSA) even though he was sentenced to two years imprisonment, and accordingly, it did not qualify as a prior felony conviction affording a career offender enhancement. Petitioner argues that, for a state conviction to qualify as a predicate for enhancement under 21 U.S.C. § 851, the underlying conduct must be punishable as a federal felony under the CSA, citing to *Lopez v. Gonzales*, 549 U.S. 47 (2006) and *Carachuri-Rosendo v. Holder*, 130 S. Ct. 2577, 2586 (2010). Petitioner argues that because his conviction of possession of cannabis with intent to deliver 5.5 ounces is punishable under U.S.S.G. § 2D1.1 as a Base Offense Level 6, and a sentencing range of 0-6 months, that that conviction was not a federal felony, and accordingly, should not have qualified as a career offender enhancement.

The Government responds that Petitioner's prior conviction was in fact a "controlled substance offense", and as such, qualifies under U.S.S.G. § 4B1.2(b). This court agrees with the Government. "A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense." U.S.S.G. § 4B1.1(a). "The term 'controlled substance offense' means an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing of a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with intent to manufacture, import, export, distribute, or dispense." U.S.S.G. § 4B1.2(b). "The term 'crime of violence' means any offense under federal or state law, punishable by imprisonment for a term exceeding one year, that—(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." U.S.S.G. § 4B1.2(a).

The PSR indicated that the contested conviction in case #04-CF-769 was that of possession of cannabis with intent to deliver, a Class 3 felony. Under Illinois law, a Class 3 felony was punishable by a term of not less than two years and not more than five years. 730 ILCS 5/5-8-1(a)(6) (2009).[2] Petitioner's possession of cannabis with intent to deliver therefore

---

[2] Although the statute's location in the Illinois Code has since moved, the current punishable term for a Class 3 felony has not changed. 730 ILCS 5/5-4.5-40(a).

was an offense under Illinois law punishable by a term exceeding one year and prohibits the distribution or dispensing of cannabis, a controlled substance so it qualifies as a controlled substance offense. Then, because Petitioner was 38 years old at the time of the underlying conviction, and Petitioner does not contest that his other conviction was sufficient to qualify for his career offender enhancement, he had two prior felony convictions of a controlled substance offense, and therefore qualified for the career offender enhancement.

Petitioner argues, however, that *Lopez* requires that his conviction must be a felony under federal law, in addition to state law. This court does not agree. First, Petitioner's reference to the base offense level of 6 erroneously treats his conviction as one for mere possession, not what he was actually convicted for, which was possession with intent to distribute. Second, the holding in *Lopez v. Gonzales* and its progeny *Carachuri-Rosendo v. Holder* and *Moncrieffe v. Holder* is peculiar to the statutory framework in the Immigration and Nationality Act (INA). The INA provides that an individual with an aggravated felony has worse collateral effects than a simple felony conviction. *Lopez v. Gonzales*, 549 U.S. 47, 50 (2006). When removal proceedings were initiated against the defendant in *Lopez*, the Government used a prior conviction that they classified as an aggravated felony to disqualify him from discretionary cancellation of removal. *Id*. at 51. The section of the INA that the Government sought to use permitted the classification of an aggravated felony only for a conviction of illicit trafficking in a controlled substance, 8 U.S.C. 1101(a)(43)(B). However, the defendant's state conviction was for helping someone else possess cocaine, which under South Dakota law was treated the same as mere possession. *Id*. at 53. The Supreme Court held that "[u]nless a state offense is punishable as a federal felony it does not count," *id*. at 55, for the purposes of the INA, because, among other reasons, commerce

or trafficking "was no part of [the defendant's state law] offense of helping someone else to possess, and certainly it is no element of simple possession, with which the State equates that crime." *Id.* at 54. Petitioner has not provided any precedential case demonstrating that the holding in *Lopez* has been extended to the career offender enhancement statute. Accordingly, *Lopez* is inapposite to Petitioner's claim because his sentence enhancement was not under the rubric of the INA and the reasoning in *Lopez* is not extensible to the career offender provisions.

Finally, as the Government points out, even without resort to the contested conviction, Petitioner still possesses the requisite two prior state convictions of either a crime of violence or a controlled substance offense for classification as a career offender, *i.e.*, possession of cocaine with intent to deliver, and aggravated battery with a firearm. Even in the absence of the cannabis conviction, Petitioner remains a career offender and was sentenced as one. Thus, Petitioner's counsel had no basis in law to challenge Petitioner's prior conviction for possession with intent to distribute. Accordingly, Petitioner's counsel did not provide ineffective assistance on this issue.

*Claim 2: Preserving appeal of the denial of the suppression motion*

In Claim 2, Petitioner claims that trial counsel provided ineffective assistance by incorrectly advising him that he could take an open plea and still preserve his suppression issue for appeal. In his attached affidavit, Petitioner testifies that

> 5) My lawyer informed me that the Government offered me a plea agreement in which I was required to waive all of my rights to appeal and collaterally attack my sentence and conviction. I refused that plea agreement. I informed my attorney that I did not want to waive my rights to appeal.

> 6) Mr. Taylor then informed me that if I entered into an 'open plea' it would preserve my rights to appeal my sentence and conviction.
>
> 7) I then asked my attorney will it also preserve my rights to challenge my suppression issues because I did not give the officer consent to search. Mr. Taylor assured me that it would.

(Affidavit in Support of Mr. Young's Motion Under 2255, #2 exh. 3 ¶¶ 5-7). As Petitioner clarifies in his Reply, the two issues he contests in this motion are: 1) petitioner was incorrectly advised that an open plea would preserve his right to appeal; and 2) trial counsel did not negotiate the proper plea to preserve the issue for appeal. (#7 p.5). But as discussed above, to succeed on a claim for ineffective assistance of counsel, Petitioner cannot only show that his attorney's performance was objectively deficient, but he must also show that he was prejudiced by the incompetent representation. *Jones*, 635 F.3d at 915. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." *Id*. Petitioner states that "[h]ad counsel not ill-advised petitioner on this point, [Petitioner] would not have pleaded guilty and insisted on going to trial," (#2 p. 9), and that "[b]ecause Petitioner would not have accepted this plea had he known that he was waiving his rights to [] challenge his conviction and sentence at every stage of the proceedings, especially during his suppression, [] he would have insisted on going to trial," (#7, p.7). Petitioner appears to assert that he was prejudiced because but for his counsel's erroneous advice that an unconditional open plea would have preserved his right to appeal, he would not have entered into the open plea and instead insisted on going to trial.

"In the context of plea agreements, the prejudice prong focuses on whether the deficient information was the decisive factor in a defendant's decision to plead guilty or to proceed to trial." *Julian v. Bartley*, 495 F.3d 487, 498 (7th Cir. 2007). Further, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). However, a "mere allegation by the defendant that he would have insisted on going to trial is insufficient to establish prejudice." *Berkey v. United States*, 318 F.3d 768, 772 (7th Cir. 2003). Instead, "[t]he defendant must go further and present objective evidence that a reasonable probability exists that he would have taken that step." *United States v. Cieslowski*, 410 F.3d 353, 359 (7th Cir. 2005).

On August 6, 2010, Petitioner filed a Notice Regarding Entry of a Plea of Guilty in which he consented to a plea hearing with Magistrate Judge David G. Bernthal. (#20). In his plea hearing on August 8, 2010, Judge Bernthal noted that Petitioner was changing his plea of guilty from a plea agreement to an open plea. Petitioner affirmatively and knowingly waived his right to a trial. That portion of the colloquy proceeded as follows:

> Q (Judge Bernthal): I talk about all that because under the Constitution and the laws of the United States, you have an absolute right to a trial by jury. So if you do not plead guilty, then Judge McCuskey will see you on the 17th of September; and at that time, he'll assign a trial date, and your case will go forward for a trial because nobody can take away your right to a trial by jury.
>
> [ * * *]
>
> Having discussed these rights with you—first of all, do you have any question about any of the rights?

|  |  |
|---|---|
| A (Petitioner): | No, sir. |
| Q: | Do you understand you're giving them up if you plead guilty? |
| A: | Yeah. |
| Q: | Do you still want to go forward— |
| A: | Yeah. |
| Q: | —with the guilty plea? All right. |

(Change of Plea Hearing, No. 09-20067 #41 7:5-11; 9:22-10:5). This court has reviewed the transcript of the plea hearing and the sentencing hearing, and was unable to find any evidence in the record to indicate that Petitioner would have, at that time, chosen to go to trial had he been informed that an open plea would waive his right to appeal the ruling on the suppression motion. Petitioner's affidavit also does not claim as much. Thus, Petitioner has failed to present objective evidence that a reasonable probability exists that he would have chosen to go to trial rather than take the open plea. Further, to the extent that Petitioner now seeks an evidentiary hearing to demonstrate this point, the underlying matter, regarding whether the seized heroin would have been suppressed as an impermissible parolee search but for this court's ruling, is moot, as will be discussed in the next section. Petitioner cannot sustain his ineffective assistance claim on this issue either.

*Claim 3: Illinois statute on searches of parolees*

Last, Petitioner claims that counsel provided ineffective assistance when he allegedly incorrectly interpreted Illinois law on searches of individuals on parole or supervised release status during Petitioner's suppression hearing. Petitioner argues that counsel mistakenly applied *Samson v. California*, 547 U.S. 843 (2008) to a provision in the Illinois parole statute, 730 ILCS

5/3-3-7(a)(10), and in doing so, failed adequately to challenge Petitioner's search and subsequent seizure of the heroin.

Petitioner argues that *Samson* is inapposite because California law requires that "inmates who opt for parole to submit to suspicionless searches by a parole officer or other peace officer at any time," *Samson,* 547 U.S. at 852, whereas Illinois law does not require the same. Petitioner argues that the relevant Illinois parole statute, 730 ILCS 5/3-3-7(a)(10) requires that "[t]he conditions of every parole and mandatory supervised release are that the subject… consent to a search of his or her person, property, or residence under his or her control." Petitioner asserts that the Illinois statute requires that an inmate on parole must give consent before a search can be conducted. Indeed, "[a]lthough defendant's condition allows for a greater variety of searchers and searches, it still requires that he give his consent to each search before it is conducted…. We hold that the search condition of defendant's MSR does not establish prospective consent to all searches." *People v. Moss*, 217 Ill. 2d 511, 525-26 (Ill. 2005); *see also People v. Wilson*, 228 Ill. 2d 35, 39 (Ill. 2008) (noting that "defendant's search condition, which mandated that he 'shall consent to a search,' did not constitute prospective consent.").

The Government responds that the basis of Petitioner's search was not his parole status, but rather, as a search incident to arrest for flight following a traffic stop and his possession of marijuana. Although the Fourth Amendment generally requires law enforcement officers to obtain a warrant based on probable cause prior to conducting a search, one of the exceptions to that rule is that an officer may conduct a warrantless search of a person incident to that person's lawful arrest. *Chimel v. California*, 395 U.S. 752, 762-63 (1969); *United States v. Childs*, 277 F.3d 947, 953 (7th Cir. 2002); *United States v. Williams*, 209 F.3d 940, 943 (7th Cir. 2000).

Traffic violations provide police officers the necessary probable cause to stop a vehicle and arrest the driver. *See Atwater v. City of Lago Vista*, 532 U.S. 318, 354 (2001) ("It is not a violation of the Fourth Amendment to arrest an individual for even a very minor traffic offense."). In addition, "it is reasonable for the police to search the body, clothing, and immediate possession of anyone in custody following an arrest on probable cause." *United States v. Jackson*, 377 F.3d 715, 716 (7th Cir. 2004).

Under Illinois law, failing to signal a turn at an intersection is a traffic violation. 625 ILCS 5/11-804. Petitioner does not contest that he failed to signal the turn. Accordingly, this court determined that there was probable cause to stop Petitioner for the traffic violation. *See* (#39 p. 44). During the traffic stop, the law enforcement officer discovered that Petitioner was on parole. *Id*. No search had taken place at this point. During the stop, however, Petitioner "takes off running", which, as this court previously stated, is what "puts it into a different posture." (#39 p. 45). Even if the traffic stop alone was not sufficient to give the officer probable cause to arrest, Petitioner's flight during the stop surely provides valid grounds for probable cause sufficient to justify an arrest. *Tom v. Voida*, 963 F.2d 952, 960 (7th Cir. 1992) ("a suspect's actual *flight* from an officer may certainly provide information to ripen an officer's preexisting suspicions into probable cause.") (emphasis in original). "[A] police officer who makes a lawful arrest may conduct a warrantless search of the arrestee's person and the area "within his immediate control." *Davis v. United States*, 131 S. Ct. 2419, 2424 (2011), *citing Chimel v. California*, 395 U.S. 752 (1969). As this court noted before, Petitioner's resistance to arrest and flight provided probable cause for arrest, and law enforcement officers were entitled to search him incident to arrest. Thus, the search of his person was lawful. By extension, counsel's failure

to argue the parole issue was not ineffective assistance because he had no duty to make futile arguments. *See Benefiel v. Davis*, 357 F.3d 655, 664 (7th Cir. 2004).

IT IS THEREFORE ORDERED THAT:

(1) Petitioner's Motion (#1) is DENIED.

(2) This case is terminated.

ENTERED this 23rd day of May, 2013

**s/ Michael P. McCuskey**

MICHAEL P. McCUSKEY
U. S. DISTRICT JUDGE